UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE NISKEY,

    Plaintiff,

    v.

JEH JOHNSON,
Secretary, Department of Homeland Security

    Defendant.

Civil Action No. 13-1269 (JDB)

## MEMORANDUM OPINION

Back in 2002, Lawrence Niskey allegedly experienced unfair treatment at his job. Eight years and several incidents later, Niskey finally filed a formal complaint with the Equal Employment Opportunity Commission. The EEOC denied his claim because Niskey had failed to exhaust his administrative remedies. This Title VII case followed, and the Court will grant [15] the government's motion to dismiss for the same reason.

## BACKGROUND

For purposes of defendant's motion to dismiss, the Court accepts as true all facts as pleaded in Niskey's complaint. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 572 (2007). Niskey's travails began in April 2002, when he "realized" that employees in his division of the Department of Defense received different treatment—as to race—regarding leave from work. Pl.'s 1st Am. Compl. [ECF No. 12] at 2. Four months later, he brought that complaint to his supervisors. The issue became personal on September 11, 2002, when Niskey requested a few hours of emergency leave to handle a transportation issue. His request was denied, and he was

deemed AWOL. The very next day, the agency suspended Niskey's access to classified information as a result of his unauthorized absence.

That same day, Niskey contacted an EEO counselor to complain that the suspension of his access to classified information was rooted in discrimination and retaliation. The counselor allegedly informed Niskey that he should not file a formal complaint until the agency took further action on his security clearance—information quite contradictory to federal regulations governing such counseling sessions. Niskey apparently took her advice.[1]

Things progressed slowly. On October 17, 2002, Niskey was suspended without pay, but his security clearance was not revoked until March 2006—and that revocation was not finalized until July 2007. Shortly thereafter, the Department of Homeland Security—by this time responsible for Niskey's old division at the Department of Defense—proposed removing him. Niskey wrote to the director of his division in protest, but was removed from his position anyway on August 31, 2007. On September 4, 2007, DHS wrote to Niskey, informing him that his termination would be effective on the 12th of that month. In the intervening days, Niskey wrote to DHS's General Counsel for Labor and Employment, but to no avail. His termination became effective, and his appeal to the Merit Systems Protection Board was unsuccessful. The decision became final in February 2008.

Twenty-one months later, in November 2009, Niskey contacted the EEOC field office in the District of Columbia, which told him to file a formal complaint. But he waited another nine months—until August 2010—to even contact an EEO counselor at DHS. Several weeks after that, on September 28, 2010, Niskey finally filed his formal complaint. DHS found against him,

---

[1] Niskey does state that he sent a letter to EEOC headquarters in October 2002, but has provided neither a copy of the letter nor any information regarding the content of that letter.

noting that he had failed to contact an EEO counselor in a timely fashion. The EEOC denied Niskey's request for reconsideration.

Over a decade after Niskey first noticed allegedly disparate treatment in his workplace, he filed the Title VII case now before this Court, claiming discrimination, retaliation, and failure to comply with agency regulations.[2] The government has moved to dismiss[3] for failure to exhaust, among other reasons, and the Court will grant that motion.

## ANALYSIS

"Title VII complainants must timely exhaust their administrative remedies before bringing their claims to court." Payne v. Salazar, 619 F.3d 56, 65 (D.C. Cir. 2010) (internal quotation marks, alterations, and citation omitted). The statute "requires that a person complaining of a violation file an administrative [complaint] with the EEOC and allow the agency time to act on" that complaint. Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir. 1995).

The exhaustion process requires two steps. First, "[a]ggrieved persons who believe they have been discriminated against on the basis of race . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). The complainant must do so within forty-five days of the alleged discriminatory action. Id. § 1614.105(a)(1). Under most circumstances, the counselor is supposed to conduct a "final interview . . . within [thirty] days of the date the aggrieved person contacted the agency's EEO office to request counseling," and must give notice of the complainant's further rights. Id.

---

[2] The government [9] previously moved to dismiss Niskey's original complaint. Niskey has since filed an amended complaint—the subject of the motion now before this Court—and hence the original motion to dismiss will be denied as moot.

[3] After Niskey filed a response to the government's motion, and the government filed a reply, Niskey [23] moved to file a surreply. The government objected. This Court permits surreplies only "to address new matters raised in a reply, to which a party would otherwise be unable to respond." United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc., 238 F. Supp. 2d 270, 276 (D.D.C. 2002). As Niskey's surreply does not respond to any new issues, and the pertinent questions have been thoroughly briefed in the first three memoranda, the Court will deny Niskey's motion and will not consider either his surreply or [24-1] the government's proposed response thereto.

§ 1614.105(d). This triggers the second step of exhaustion: the employee must file a formal complaint within fifteen days of receiving such notice. Id. § 1614.106(b).

These deadlines are not jurisdictional, and are thus subject to equitable tolling and estoppel. See Hairston v. Tapella, 664 F. Supp. 2d 106, 111 (D.D.C. 2009). But "[t]he procedural requirements governing a plaintiff's right to bring a Title VII claim in court are not mere technicalities" either. Hines v. Blair, 594 F. Supp. 2d 17, 23 (D.D.C. 2009) (alteration, internal quotation marks, and citation omitted). Rather, "it is part and parcel of the Congressional design to vest in the federal agencies and officials engaged in hiring and promoting personnel 'primary responsibility' for maintaining nondiscrimination in employment." Id. (citation omitted). Thus, "[e]xhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary." Brown v. Marsh, 777 F.2d 8, 14 (D.C. Cir. 1985). In short, a "plaintiff must establish that he or she acted diligently to preserve the claim." Symko v. Potter, 505 F. Supp. 2d 129, 136 (D.D.C. 2007) (internal quotation marks and alteration omitted).

The government alleges here that Niskey failed to comply with these exhaustion requirements. "Because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it." Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997). The government meets that burden here.

In his formal complaint, Niskey raised myriad issues, reflecting dissension from nearly every agency action described above. But for most of these claims, he does not even come close to satisfying the first requirement of exhaustion: meeting with an EEO counselor within forty-five days of each incident. For instance, Niskey's complaint details discriminatory office leave

policies, alleges that his background check was undertaken in retaliation for voicing his concerns, and argues that his removal failed to meet the standards of due process. Ex. 4 to Def.'s Mot. to Dismiss Am. Compl., Initial Decision [ECF No. 15-3] at 11–13. But in the long stretch from April 2002, when Niskey first noticed disparate treatment, until August 2010, when he contacted a DHS counselor, Niskey contacted an EEO counselor only once. That one contact occurred early, in September 2002, before Niskey was suspended without pay, before his security clearance was revoked, before he was fired. And according to Niskey's amended complaint, that informal contact focused on one grievance alone: Niskey's allegation that his access to classified information was suspended because of racism and retaliation.[4] See Pl.'s 1st Am. Compl. at ¶¶ 13–14.

Limited as it was, that single session with the EEO counselor could not serve to exhaust any of Niskey's other claims. And standing alone, the grievance discussed at their meeting does not amount to much. True, Niskey couldn't access classified information at that point. But he has failed to allege that such a limitation reduced his job responsibilities. See Forkkio v. Powell, 306 F.3d 1127, 1132 (D.C. Cir. 2002) ("It did not cause a reduction in [plaintiff's] pay, benefits, job responsibilities, or any other substantial change in working conditions that might support finding an adverse action" for Title VII purposes.). Thus, the suspension of Niskey's security clearance did not truly impact him until he was suspended without pay—an action Niskey did <u>not</u> bring to the attention of the counselor.

To be sure, Niskey argues that the EEO counselor failed in her duties at the September 2002 meeting: in contravention of federal regulation, she "advised [him] to not file a formal EEO

---

[4] Some courts in this district have held that separate retaliation claims need not be exhausted if the scope of the original investigation would have revealed them anyway. See Hairston, 664 F. Supp. 2d at 115 (collecting cases). But this rationale applies only after a formal charge or complaint is filed, not after a mere meeting with an EEO counselor. See id. But see Pierce v. Mansfield, 530 F. Supp. 2d 146, 154 n.8 (D.D.C. 2008) (explaining that "[t]he plaintiff . . . need not exhaust his administrative remedies to bring a retaliation claim" where the failure to exhaust stemmed from an untimely EEO counseling session).

complaint until the agency took action on his security clearance." Pl.'s 1st Am. Compl. at ¶ 15. But that doesn't excuse Niskey's failure to bring other grievances to her attention. And it certainly doesn't excuse Niskey's decision to wait more than three years after his security clearance was revoked to file a formal complaint. Niskey was at least on notice that he should file a formal complaint after such a revocation, and so any equitable tolling would end at that point. See, e.g., Kale v. Combined Ins. Co. of Am., 861 F.2d 746, 752 (1st Cir. 1988) ("[W]here such ignorance [of statutory rights] is caused either by misconduct of an employer or by failure of that employer to conspicuously post the informational EEOC notices required by the ADEA, there may be a valid claim for equitable tolling—at least until the employee receives actual notice of his statutory rights or retains an attorney."). Niskey's behavior was dilatory, not diligent. His security clearance was first revoked in March 2006 and was finalized in July 2007, and his removal occurred in September 2007, with his MSPB challenge finalized in February 2008. No excuse has even been proffered for waiting until November 2009 to contact any EEO office and until September 2010 to file a formal complaint.

Niskey tries, however, to shoehorn one more action into the guise of exhaustion. After he was removed from his job (but before the termination was effective), Niskey wrote to DHS's General Counsel for Labor and Employment. He suggests that the letter was an adequate substitute for the first exhaustion requirement, because "the requirement of 'initiating contact with a Counselor' is satisfied when an employee initiates contact with an agency official logically connected with the EEO process and exhibits an intent to begin the EEO process." Johnson v. Peake, 634 F. Supp. 2d 27, 31 (D.D.C. 2009) (alteration and citation omitted). But, at most, Niskey's message conveyed platitudes about the law in general; it did not allege that DHS had violated that law. See Ex. 4 to Pl.'s 1st Am. Compl., Message to Nicole Heiser [ECF No.

12-4] ("An important responsibility of the federal government is to protect the individual, statutory and Constitutional rights of federal employees. . . . All federal employees should receive fair and equitable treatment in the workplace . . . ."). These broad statements, made to someone who is not an EEO counselor, cannot suffice. See Klugel v. Small, 519 F. Supp. 2d 66, 72 (D.D.C. 2007) (finding failure to exhaust where the plaintiff's "letter neither charges discrimination nor evidences [plaintiff's] intention to initiate the EEO process"); Allen v. Runyon, App. No. 01952557, 1996 WL 391224, at *3 (E.E.O.C. July 8, 1996) ("We find nothing in appellant's letter, however, that indicated an intent to pursue her claim that the . . . notice of removal was discriminatory. Nothing in the letter referenced the notice of removal. Rather, the letter broadly complained of discrimination generally . . . .").

A final point: the third count in Niskey's complaint alleges that the government failed to comply with 29 C.F.R. § 1614.105, which requires proper investigation and notice of the time to file an EEO complaint. The facts in the complaint bear out this conclusion, at least at this stage of the litigation. The EEO counselor, after all, gave Niskey bad advice about when to file a complaint with the EEOC. But it is unclear how, precisely, this allegation is packaged.

Whatever Niskey's claim, however, it would fail. The government reads his complaint to mean that the agency's failures to comply were themselves discriminatory or retaliatory action. Niskey, after all, still seeks the same relief he attaches to his discrimination and retaliation claims: reinstatement of his position and damages for lost earnings. As the government correctly points out, however, Title VII is the exclusive remedy for such a request. Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976). And as Niskey raises this claim for the first time in his amended complaint, he has obviously not timely exhausted it, either.

The complaint does not seem to comport with the government's reading—Niskey nowhere suggests that the failure to comply with regulations was discriminatory or retaliatory—but it is difficult to discern a better interpretation. If Niskey is instead complaining about the process of his clearance revocation, "the remedy would be for the district court to order the agency to correct its procedural errors and not . . . to open the decision to a review on the merits." Tenenbaum v. Caldera, 45 F. App'x 416, 418 (6th Cir. 2002). And if Niskey is merely contending that, as a fact, the agency failed to comply, it is difficult to see what the remedy would be: we have already taken its mistakes into account in considering equitable tolling, and it did not change the outcome for Niskey.

## **CONCLUSION**

For the reasons set forth above, [15] the government's motion to dismiss is granted. A separate order accompanies this memorandum.

/s/
JOHN D. BATES
United States District Judge

Dated: September 29, 2014